UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALDO MEDRANO AYALA,<br><br>    Plaintiff,<br><br>    v.<br><br>JOHN GRANT, et al.,<br><br>    Defendants. | Case No. 15-cv-03037 RMW (PR)<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AS UNTIMELY; GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re:  Dkt. Nos. 23, 31, 43 |

       Plaintiff, a California state prisoner proceeding pro se, filed a civil action in state court. Defendants filed a notice of removal to federal court because plaintiff's complaint indicated that he was filing a lawsuit pursuant to 42 U.S.C. § 1983.  Defendant T. Amrhein has filed a motion to dismiss as well as a motion for summary judgment.  The remaining defendants have filed a separate motion to dismiss as well as a motion for summary judgment.  Although given the opportunity, plaintiff has not filed any opposition.  For the reasons stated below, defendants'

Case No. 15-cv-03037 RMW (PR)
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AS UNTIMELY; GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

1

motions to dismiss are GRANTED, and defendants' motions for summary judgment are GRANTED.

## BACKGROUND

The following facts are taken in the light most favorable to plaintiff.

On June 9, 2011, Lt. T. Amrhein and Sgt. J. Guthrie plotted an attack on plaintiff because plaintiff had filed a civil rights case against Sgt. J. Guthrie in Ayala v. Ayers, No. 10-0979 JSW (N.D. Cal. filed March 8, 2010). Dkt. No. 5-2 at 4-5. According to plaintiff, prison guards B. Radel, J. Del Rosario, and A. Bulatao grabbed plaintiff and Bulatao slammed plaintiff's head into the ground. They began hitting plaintiff with their fists and knees, and repeatedly punched and slammed plaintiff's head on the concrete floor. Id. at 5. Del Rosario placed leg chains on plaintiff, and Amrhein and Gurthrie ordered the guards to drag plaintiff into an office and place him in a chair. Id. at 6. Plaintiff was bleeding profusely from his head. Guthrie and Amrhein began interrogating plaintiff. When plaintiff refused to answer, Amrhein told him that if plaintiff answered the questions, Amrhein would have his guards stop beating him. Id. Plaintiff continued to refuse to answer the questions, and Gurthrie, Fradel, Del Rosario, and Bulatao began beating plaintiff again. Id. Plaintiff became unconscious and slipped onto the floor. Id. Guthrie told the guards not to activate the alarm until after they cleaned up the blood. Id. at 6-7. Amrhein stated, "That's what happens when you fucken [sic] Hispanics don't cooperate." Id. at 7. D. Smethers took plaintiff to the drop-in clinic for medical care. Id. at 7, 9. Nurse T. Peterson looked at plaintiff's head wound and remarked that she could not stop the bleeding. Dkt. No. 5-1 at 9-10. Amrhein instructed Peterson to wrap a bandage around plaintiff's head and return him to the adjustment center. Id. at 10. Plaintiff returned to the adjustment center without having his head cleaned or seeing a doctor. Id. Plaintiff states that he did not see a doctor for over four months.

Case No. 15-cv-03037 RMW (PR)
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AS UNTIMELY; GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Id.

On June 21, 2011, plaintiff was written up for a rules violation report stemming from the June 9 incident that plaintiff claims was false. On March 9, 2013, Lt. B.A. Walls found plaintiff guilty of resisting peace officer. Dkt. No. 5-2 at 7-9; Decl. Walls, Ex. A.

As a result of the incidents on June 9, 2011, plaintiff states that he has suffered long term injuries that cause him high levels of daily pain. Dkt. No. 5-1 at 22. Dr. J. Grant was plaintiff's primary care physician, and plaintiff asserts that Dr. Grant refused to properly diagnose plaintiff's injuries, refused to provide pain medications, and refused to provide a referral to a medical specialist. Id. at 22-24. According to plaintiff, Nurse Peterson, Nurse Podolsky, and Nurse White all failed to provide plaintiff access to doctors who could treat plaintiff's pain. Id. at 25-26. Plaintiff also alleges that Dr. Tootell repeatedly refused to allow plaintiff to see a specialist to treat plaintiff's pain. Id. at 26-27.

At initial screening, this court found that, liberally construed, plaintiff stated cognizable claims of excessive force, retaliation, and deliberate indifference to his serious medical needs. The court also exercised supplemental jurisdiction over plaintiff's state law claims.

## ANALYSIS

I.   Motions to Dismiss

Defendants have filed motions to dismiss, arguing, inter alia, that plaintiff's allegations regarding incidents occurring in 2011 are time-barred, and the state claims are barred as unexhausted. The court agrees.

A.   Timeliness

Section 1983 does not contain its own limitations period. The appropriate period is that of the forum state's statute of limitations for personal injury torts. See Wilson v. Garcia, 471 U.S.

Case No. 15-cv-03037 RMW (PR)
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AS UNTIMELY; GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

3

261, 276 (1985); TwoRivers v. Lewis, 174 F.3d 987, 991 (9th Cir. 1999). In California, the general residual statute of limitations for personal injury actions is the two-year period set forth at California Civil Procedure Code § 335.1 and is the applicable statute in § 1983 actions. See Maldonado v. Harris, 370 F.3d 945, 954 (9th Cir. 2004); see also Cal. Civ. Proc. Code § 335.1 (current codification of residual limitations period, which became applicable on January 1, 2003, is two years). Thus, without tolling, because plaintiff's cause of action accrued in June 2011, plaintiff's federal complaint was due in June 2013.

     California Civil Procedure Code section 352.1 recognizes imprisonment as a disability that tolls the statute of limitations when a person is "imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term of less than for life." See Cal. Civ. Proc. Code § 352.1(a). Thus, an inmate serving other than life without parole or under a death sentence has four years to bring a Section 1983 claim for damages in California, i.e., the regular two year period under section 335.1 plus two years during which accrual was postponed due to the disability of imprisonment. See Martinez v. Gomez, 137 F.3d 1124, 1125-26 (9th Cir. 1998) (per curiam) (prisoner serving life sentence with the possibility of parole is entitled to Section 352.1 tolling); Grasso v. McDonough Power Equip., 264 Cal. App. 2d 597, 601 (1968). Here, because plaintiff has been sentenced to death, he is not entitled to tolling under Section 352.1.

     The statute of limitations is also tolled for the period in which a prisoner administratively exhausted his underlying grievances, pursuant to the requirements of the PLRA. See Brown v. Valoff, 422 F.3d 926, 942-43 (9th Cir. 2005) ("the applicable statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process"). Here, defendants have provided a copy of plaintiff's administrative appeals regarding the June 9, 2011 incident. The first appeal is dated July 4, 2011. See Rangel Decl., Ex. A. Plaintiff pursued his administrative remedies

Case No. 15-cv-03037 RMW (PR)
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AS UNTIMELY; GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

4

through to the Director's Level of Review, which responded to plaintiff on March 2, 2012. See id., Ex. B. Tolling to account for plaintiff's exhaustion efforts thus gives plaintiff approximately eight additional months from June 2013. Plaintiff's complaint was therefore due in February 2014.

There is no other indication that plaintiff is entitled to any other tolling. The June 2011 incidents about which plaintiff complains in his March 19, 2015 complaint[1] are therefore untimely.

Accordingly, defendants' motions to dismiss plaintiff's claims that accrued in June 2011 are GRANTED. Specifically, the excessive force claim against Amrhein, Guthrie, Radel, Del Rosario, and Bulatao is DISMISSED as untimely. The retaliation claim against Amrhein, Guthrie, Radel, Del Rosario, Bulatao, and Smethers is DISMISSED as untimely. The deliberate indifference claim against Nurse Peterson is DISMISSED as untimely.

Normally, district courts must afford pro se prisoner litigants an opportunity to amend to correct any deficiency in their complaints. See Lopez v. Smith, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc). However, a district court should deny leave to amend on futility grounds if "it appears beyond doubt that the plaintiff's proposed amended complaint would not remedy the deficiencies in the previous complaint." Adam v. Hawaii, 235 F.3d 1160, 1164 (9th Cir. 2001). Put differently, futility of amendment frequently means that it is not factually possible for plaintiff to amend the complaint so as to cure the deficiencies. See Schmier v. United States Court of Appeals, 279 F.3d 817, 824 (9th Cir. 2002).

Here, there is no allegation that plaintiff had any further contact with defendants Amrhein,

---

[1] Defense counsel for Amrhein indicates that June 30, 2015 is the date upon which this case was removed to federal court. March 19, 2015, is the actual date plaintiff filed suit in state court.

Case No. 15-cv-03037 RMW (PR)
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AS UNTIMELY; GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

5

Guthrie, Radel, Del Rosario, Bulatao, Smethers, or Peterson after June 2011. Therefore, allowing plaintiff to amend his complaint against these defendants would be futile. See Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1298 (9th Cir. 1998) (recognizing that the general rule that allows parties to amend their pleadings does not extend to cases in which an amendment would be an exercise in futility); Platt Elec. Supply, Inc. v. EoffElec. Inc., 522 F.3d 1049, 1060 (9th Cir. 2008) ("because Platt's claims are barred by the statute of limitations, any amendments would have been futile").

Accordingly, the dismissal of the claims against defendants Amrhein, Guthrie, Radel, Del Rosario, Bulatao, Smethers, and Peterson are with prejudice, and leave to amend shall not be granted.

B. State Law Claims

Plaintiff has raised state law claims of medical malpractice and negligence over which the court exercised supplemental jurisdiction. Defendants assert that plaintiff has not adequately pleaded compliance with the California Government Claims Act, which requires that personal injury claims for money damages against a public employee must be filed with the California Victim Compensation and Government Claims Board ("VCGCB") within six months of accrual of the cause of action that forms the basis of the claim. See Cal. Gov't Code § 911.2(a); see also Ashker v. Cate, No. 09-cv-2948-CW, 2012 WL 1094436, *7 (N.D. Cal. Mar. 30, 2012) ("Pursuant to . . . Cal. Gov't Code §§ 900 et seq., a personal injury claim against a public employee must be filed with the Board within six months after the date of the event that gave rise to the claim."). In addition, there is no indication that plaintiff has presented his claims to the VCGCB. Because plaintiff has never presented his claims to the VCGCB, see Duncan Decl. ¶ 3 and Ex. B, defendants argue that plaintiff is barred from bringing his state law claims for money damages.

The court agrees. Plaintiff's state law claims are dismissed.

II.     Motions for Summary Judgment

The remaining defendants, Walls, Tootell, Grant, Podolsky, and White, move for summary judgment on plaintiff's remaining claims of retaliation and deliberate indifference to his serious medical claims.

   A.     Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings, and by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The court is only concerned with disputes over

material facts, and "factual disputes that are irrelevant or unnecessary will not be counted." Liberty Lobby, Inc., 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. Id. If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." Celotex Corp., 477 U.S. at 323.

At the summary judgment stage, the court must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. See Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999).

B.   Retaliation Claim

Plaintiff alleges that Walls retaliated against him and assisted in the cover-up of the assault on plaintiff on June 9, 2011by finding him guilty of resisting a peace officer. Dkt. No. 5-2 at 7-9.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). Accord Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995) (prisoner suing prison officials under Section 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action did not advance legitimate penological goals, such as preserving institutional order and discipline).

Case No. 15-cv-03037 RMW (PR)
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AS UNTIMELY; GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

8

Plaintiff does not dispute defendants' recitation of what occurred at the disciplinary hearing. At the hearing on March 9, 2013, Walls determined that plaintiff was literate and capable of understanding the charges against him. Walls Decl. ¶ 11. Plaintiff's witnesses Nunez, Rice, Rivera, and Pineda submitted statements on behalf of plaintiff. Id. ¶¶ 13, 15. Walls declares that he found the inmate witnesses' testimony to be incredible because none of those witnesses were present during the use-of-force incident that was the subject of plaintiff's disciplinary charge. Id. ¶¶ 16-17. On the other hand, the testimony of Bulatao, Fradel, Del Rosario, and Gurthrie was that plaintiff became physically resistive and lunged at the officers when they instructed him to enter the office and sit down. Id. ¶ 18. Based on that, Walls found plaintiff guilty of resisting a peace officer. Id. Walls further declared that at the time of the hearing, Walls was unaware of plaintiff's litigation or appeal activity.

Based on this undisputed evidence, plaintiff has failed to demonstrate that there is a genuine issue of material fact regarding Walls' motive. To support a retaliation claim, the prisoner must show that the type of activity he was engaged in was constitutionally protected, that the protected conduct was a substantial or motivating factor for the alleged retaliatory action, and that the retaliatory action advanced no legitimate penological interest. See Hines v. Gomez, 108 F.3d 265, 267-68 (9th Cir. 1997) (inferring retaliatory motive from circumstantial evidence). Mere speculation that defendants acted out of retaliation is not sufficient. See Wood v. Yordy, 753 F.3d 899, 904 (9th Cir. 2014) (citing cases) (affirming grant of summary judgment where no evidence that defendants knew about plaintiff's prior lawsuit, or that defendants' disparaging remarks were made in reference to prior lawsuit). Here, plaintiff has proffered no facts to support a reasonable inference that Walls was aware of plaintiff's lawsuit or prior grievances, and Walls expressly disavows any knowledge. In short, plaintiff does not provide any facts to show that

Case No. 15-cv-03037 RMW (PR)
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AS UNTIMELY; GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Walls possessed a retaliatory motive when he found plaintiff guilty of a rules violation on March 9, 2013. Accordingly, defendants are entitled to summary judgment on the retaliation claim against Walls.

### C. Medical Needs Claim

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. See McGuckin, 974 F.2d at 1059. A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. Farmer v. Brennan, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference." Id. If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk. Gibson v. County of Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002).

#### 1. Nurses Podolsky and White

Plaintiff alleges that Nurses Podolsky and White failed to send plaintiff to a doctor to treat plaintiff's chronic pain. Dkt. No. 5-1 at 25. However, plaintiff sets forth no specific evidence to support his assertions against Nurses Podolsky or White. Plaintiff does not allege that he told either of these defendants that he wished to see a doctor or that they refused his requests to see a doctor. In addition, defendants declare that they did not participate in the day-to-day treatment

Case No. 15-cv-03037 RMW (PR)
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AS UNTIMELY; GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

decisions of plaintiff's primary care physician. White Decl. ¶ 3; Podolsky Decl. ¶ 3. Specifically, neither Nurse White nor Podolsky had any control over the decisions regarding plaintiff's pain medication, and did not have any input into the timing of plaintiff's medical appointments with his primary care physician. White Decl. ¶ 5; Podolsky Decl. ¶¶ 3, 7. Thus, there is an absence of evidence that Nurses White and Podolsky were aware that plaintiff faced a substantial risk of harm, or that they disregarded that risk by failing to take reasonable steps to abate it.

Thus, defendants are entitled to summary judgment on this claim against Nurses White and Podolsky.

### 2. Dr. Grant

Plaintiff alleges that Dr. Grant, his primary care physician, refused to provide pain medications, and refused to provide a referral to a medical specialist. However, plaintiff does not provide any specific examples, nor does plaintiff provide any specific dates to support his claim. Dr. Grant provides a more detailed story.

On September 4, 2011, plaintiff submitted a health services request to obtain a renewal of his hydrocortisone cream prescription. Grant Decl. ¶ 8. Plaintiff did not complain about any injuries he sustained from the June 9, 2011 incident. Id. A month later, plaintiff requested to see a doctor. Id. ¶ 9. Dr. Grant examined plaintiff and noted that plaintiff had been showing chronic lower back pain from degenerative joint disease. Id. ¶ 10. Dr. Grant noted a 2006 MRI showing that plaintiff had mild degenerative joint disease. Id. Plaintiff told Dr. Grant that he was very good about exercising and practicing yoga. Id. Dr. Grant increased plaintiff's pain medication to three tablets of Tylenol with codeine at night, and two tablets in the morning. Id. Because of plaintiff's ability to exercise, apparent energy, and lack of complaints regarding headaches or other injuries, Dr. Grant believed that the current medications were sufficient to manage plaintiff's

Case No. 15-cv-03037 RMW (PR)
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AS UNTIMELY; GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

11

lower back pain and discomfort.  Id.  Dr. Grant did not believe that further treatment or a referral were necessary.  Id.

From 2011 through 2013, Dr. Grant treated plaintiff for chronic lower back pain, and occasional muscle spasms and nerve pain from age and arthritis.  Id. ¶ 50.  Dr. Grant did not observe anything that warranted referral to a specialist.  Id.  In addition, the record belies plaintiff's allegation that Dr. Grant refused to provide him with pain medications.  Id. ¶¶ 10, 12, 14, 16, 18, 20, 22, 24.

Plaintiff does not set forth any evidence to support his claim that Dr. Grant exhibited deliberate indifference toward any serious medical need.  Dr. Grant has provided his assessment of his treatment of plaintiff, and provided support for his medical decisions regarding plaintiff's treatment.  Plaintiff has not shown any genuine issue of material fact regarding whether Dr. Grant purposefully acted or failed to act which resulted in harm.  See McGuckin, 974 F.2d at 1060.  At most, plaintiff has shown a difference of opinion between himself and Dr. Grant regarding the best course of treatment.  However, that does not give rise to a Section 1983 claim.  See Toguchi v. Chung, 391 F.3d 1051, 1058-60 (9th Cir. 2004); Franklin v. Oregon, 622 F.2d 1337, 1344 (9th Cir. 1989).  On this record, plaintiff has not provided any evidence to show that the course of treatment Dr. Grant chose was medically unacceptable under the circumstances and that he chose this course in conscious disregard of an excessive risk to plaintiff's health.  See Toguchi, 391 F.3d at 1058.

Accordingly, defendants are entitled to summary judgment as to the claim against Dr. Grant.

### 3. Dr. Tootell

Plaintiff alleges that Dr. Tootell repeatedly refused to allow plaintiff to see a specialist to

Case No. 15-cv-03037 RMW (PR)
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AS UNTIMELY; GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

12

treat plaintiff's pain. Dkt. No. 5-1 at 26-27. However, plaintiff provides no specific examples of when or how Dr. Tootell refused to allow plaintiff to see a specialist.

The undisputed evidence shows that Dr. Tootell did not participate in Dr. Grant's treatment decisions regarding whether plaintiff should see a specialist, or what medications were appropriate for plaintiff. Tootell Decl. ¶ 5. Dr. Tootell's involvement with plaintiff appears to be a single denial of a second-level review of plaintiff's grievance. Dr. Tootell denied the grievance after reviewing plaintiff's health records as well as the physician's decisions. Id. ¶ 2 and Ex. A. Here, plaintiff has not shown that Dr. Tootell should have been aware of any risk to plaintiff's health, let alone that Dr. Tootell actually was aware. As Dr. Tootell stated, "[t]he purpose of healthcare appeals is not to provide treatment [] but to evaluate the reasonableness of the treatment an inmate's primary-care physician has already provided." Id. See Peralta v. Dillard, 744 F.3d 1076, 1086-87 (9th Cir. 2014) (en banc) (recognizing that a Chief Medical Officer who signs second-level appeals, but did not independently review inmate's claims before signing off on appeals, relying instead on medical opinions of prison staff, was not deliberately indifferent).

Accordingly, defendants' motions for summary judgment are GRANTED.[2] Because the court grants summary judgment on the merits, it will not address defendants' alternative arguments.

## CONCLUSION

Defendants' motions to dismiss plaintiff's claims accruing in 2011 are GRANTED. Defendants' motions for summary judgment are GRANTED. Plaintiff's state law claims are DISMISSED as barred. The Clerk shall terminate all pending motions, enter judgment, and close

---

[2] Defendants' motion to stay discovery is DENIED as moot.

Case No. 15-cv-03037 RMW (PR)
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AS UNTIMELY; GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

13

the filed.

**IT IS SO ORDERED.**

DATED: 8/8/2016



RONALD M. WHYTE
UNITED STATES DISTRICT JUDGE

Case No. 15-cv-03037 RMW (PR)
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AS UNTIMELY; GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

14